IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARINE LUMBER CO., an Oregon corporation, | ) ) ) | CIVIL 16-00365 LEK-RLP |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| PRECISION MOVING & STORAGE INC., a Hawaii corporation; DOE DEFENDANTS 1-50, | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff Marine Lumber Co.'s ("Plaintiff" or "Marine Lumber") Motion for Summary Judgment ("Motion"), filed on August 5, 2016. [Dkt. no. 17.] Defendant Precision Moving & Storage Inc. ("Defendant" or "Precision Moving") filed its memorandum in opposition on October 10, 2016, and Plaintiff filed its reply on October, 17, 2016. [Dkt. nos. 28, 30.] This matter came on for hearing on October 31, 2016. On November 1, 2016, this Court issued an entering order granting Plaintiff leave to file a surreply, and Plaintiff did so on November 15, 2016. [Dkt. nos. 38, 40.]

On January 31, 2017, this Court issued an entering order stating that Plaintiff's Motion was DENIED WITHOUT PREJUDICE ("1/31/17 EO Ruling"). [Dkt. no. 47.] The instant order supersedes the 1/31/17 EO Ruling. After careful consideration of the Motion, supporting and opposing memoranda,

the arguments of counsel, and the relevant legal authority, Plaintiff's Motion is HEREBY DENIED WITHOUT PREJUDICE for the reasons set forth below.

**BACKGROUND**

Marine Lumber filed its Complaint on June 30, 2016, based on diversity jurisdiction. [Complaint at ¶ 4.] The instant case arises from Precision Moving's alleged agreement to purchase certain materials from Marine Lumber. [Id. at ¶ 7.] The Complaint alleges the following claims: breach of contract ("Count I"); [id. at ¶¶ 6-15;] action on account ("Count II"); [id. at ¶¶ 16-18;] account stated ("Count III"); [id. at ¶¶ 19-22;] unjust enrichment ("Count IV"); [id. at ¶¶ 23-28;] quantum meruit ("Count V"); [id. at ¶¶ 29-32;] and assumpsit ("Count VI") [id. at ¶¶ 33-35]. Plaintiff seeks the following relief: judgment against Defendant in the amount of $130,690.00; ten percent interest from the date the amount was due until it is paid in full; reasonable attorneys' fees and costs; "disbursements incurred as a result of Precision Moving's conduct"; and any other just and equitable relief. [Id. at pg. 9.]

## I.  **Motion**

In the instant Motion, Plaintiff seeks summary judgment as to each of the claims alleged in the Complaint and an award of all of the relief prayed for in the Complaint. [Motion at 2.]

Plaintiff submits the following evidence in support of its position.

Plaintiff asserts that it had a binding agreement with Precision Moving, pursuant to which Precision Moving agreed to purchase certain materials from Marine Lumber and Marine Lumber agreed to provide the materials and to invoice Precision Moving for the cost. The period of the agreement began on or about January 29, 2016 and continued through June 3, 2016. Marine Lumber did provide Precision Moving with the materials at the agreed-upon prices and sent invoices to Precision Moving. Precision Moving retained the materials. The total amount of the invoices was $130,690.00. [Pltf.'s Separate and Concise Statement of Facts in Supp. of Motion ("Pltf.'s CSOF"), filed 8/5/16 (dkt. no. 18), Decl. of Edward McGrath ("E. McGrath Decl.") at ¶¶ 4-7.[1]] Edward McGrath states that $130,690.00 is the reasonable value of the goods that Marine Lumber provided to Precision Moving, at Precision Moving's request. [Id. at ¶ 12.] He also states that Marine Lumber "has performed all obligations required of it, or such obligations have been excused, and all other conditions precedent to Precision Moving's obligation to pay have occurred." [Id. at ¶ 11.]

---

[1] Edward McGrath is the president of Marine Lumber Co. [E. McGrath Decl. at ¶ 3.]

The invoices dated January 29, 2016, March 31, 2016, and April 13, 2016 were each due within sixty days of the date on the invoice; and the June 2, 2016 and June 3, 2016 invoices were each due within thirty days of the date on the invoice. [E. McGrath Decl., Exhs. A-E (1/29/16 Invoice, 3/31/16 Invoice, 4/13/16 Invoice, 6/2/16 Invoice, 6/3/16 Invoice (collectively "the Invoices")).[2]] Precision Moving has not paid anything to Marine Lumber on the Invoices. [E. McGrath Decl. at ¶ 10.] On or about June 17, 2016, Marine Lumber provided Precision Moving with a statement of account and, upon the provision of the statement, Precision Moving was indebted to Marine Lumber in the amount of $130,690.00 for the materials that Precision Moving purchased. [Pltf.'s CSOF, Decl. of Scott Tracy ("Tracy Decl.") at ¶ 5.[3]] Mr. Tracy spoke with Michelle Rodrigues of Precision Moving on or about June 17, 2016 about the outstanding Invoices. According to Mr. Tracy, Ms. Rodrigues did not object to the amount owed, apologized for any inconvenience they had caused, and promised that Precision Moving would promptly make payment in full. Precision Moving, however, never made payment. [Id. at

---

[2] The 1/29/16 Invoice, 3/31/16 Invoice, and 4/13/16 Invoice describe the product as "WOODEN BOXES PER 40' H/C CONTAINER FOR U.S. MILITARY HOUSEHOLD GOODS SHIPMENTS." [E. McGrath Decl., Exhs. A-C,] The 6/2/16 Invoice and the 6/3/16 Invoice have "Type II Box" for the description. [Id., Exhs. D-E.]

[3] Scott Tracy is a Marine Lumber employee. He handles the Precision Moving account. [Tracy Decl. at ¶ 4.]

¶¶ 5-7.]

Plaintiff's counsel submitted a declaration authenticating emails that he sent to Ms. Rodrigues and William Fraser in June 2016. [Pltf.'s CSOF, Decl. of Joshua D. Stadtler ("Stadtler Decl.") at ¶¶ 3, 5-7, 9, Exhs. G-J.] Mr. Stadtler states that he spoke with Mr. Fraser on or about June 29, 2016. According to Mr. Stadtler, Mr. Fraser acknowledged the debt and proposed a payment plan, but Marine Lumber never received any payment from Precision Moving. [Id. at ¶¶ 7-8.]

## II. **Memorandum in Opposition**

Defendant asserts that all of the material facts described in the Motion are in dispute, and almost $40,000 of Marine Lumber's purported damages are attributable to materials purchased by and provided to one of Precision Moving's competitors. [Mem. in Opp. at 2.] Defendant submitted a declaration by its president: 1) denying that he entered into an oral contract with Marine Lumber on behalf of Precision Moving; and 2) stating that none of his employees did so, nor were any of them authorized to do so. [Def.'s Concise Statement of Facts in Opp. to Motion ("Def.'s CSOF"), filed 10/10/16 (dkt. no. 29), Decl. of William A. Fraser ("Fraser Decl.") at ¶¶ 2-4.] Mr. Fraser states that the agreement, or agreements, alleged by Marine Lumber were never formed, and that no meeting of the minds

occurred. [Id. at ¶ 6.] Mr. Fraser states that Precision Moving "did not contract for or receive, and has no record of receiving [the] materials [referred to in the 6/2/16 Invoice and the 6/3/16 Invoice], as well as others that Marine Lumber Company is suing on." [Id. at ¶¶ 8-9.] He also states, in the context of describing a June 29, 2016 conversation with Mr. Stadtler: "To the extent Plaintiff shipped any goods to Defendant, the goods were unwanted and defective goods from China that Defendant did not request, that Defendant rejected, and that Plaintiff for some inexplicable reason refused to take back." [Id. at ¶ 9.] Mr. Fraser states that the Stadtler Declaration and Mr. Stadtler's letters contain numerous false statements. [Id. at ¶ 10.] Mr. Fraser states that he never acknowledged to Mr. Stadtler or anyone else that Precision Moving owed a debt to Marine Lumber and he never proposed a payment plan to Mr. Stadtler or anyone else. [Id. at ¶¶ 11-14.] According to Mr. Fraser, because he never acknowledged the debt, he "did not respond to Mr. Stadtler's self-serving emails." [Id. at ¶ 11.]

Defendant submitted a declaration by Ms. Rodrigues, who, at all relevant times, worked in Precision Moving's accounting department. [Def.'s CSOF, Decl. of Michelle Rodrigues ("Rodrigues Decl.") at ¶ 2.] She states that the Tracy Declaration makes numerous false statements. [Id. at ¶ 3.] She denies that she spoke with anyone "named Scott Tracy regarding

6

any alleged outstanding balance due and owing" to Marine Lumber.
[Id. at ¶ 4.]  She denies that she: acknowledged to anyone that
Precision Moving owed any money to Marine Lumber; apologized for
any inconvenience caused by the purported non-payment to Marine
Lumber; or promised that Precision Moving would pay Marine Lumber
any money.  She states that she does not have the authority do
any of those things.  [Id. at ¶¶ 5-7.]

The Complaint alleges: "Precision Moving also breached
its agreement with Marine Lumber by anticipatorily repudiating
its payment obligations for the invoices dated June 2, 2016, and
June 3, 2016."  [Complaint at ¶ 11.]  Defendant argues that this
is an acknowledgment that Precision Moving did not want the
materials that Marine Lumber was shipping to it.  [Mem. in Opp.
at 5-6.]  Further, not only are the Invoices for materials that
Precision Moving did not order, two of them – totaling almost
$40,000 – are for materials shipped to Crown Relocations
("Crown"), not Precision Moving.[4]  [Id. at 6 (citing Pltf.'s
Exhs. D-E).[5]]  Defendant argues that the there is no evidence in

_____

[4] Crown is one of Precision Moving's competitors.  [Fraser
Decl. at ¶ 7.]

[5] In the 1/29/16 Invoice, 3/31/16 Invoice, and 4/13/16
Invoice, both the "Bill To" box and the "Marine Lumber Inventory"
box have Precision Moving's name and address.  [E. McGrath Decl.,
Exhs. A-C.]  In the 6/2/16 Invoice and 6/3/16 Invoice, although
the "Bill To" box has Precision Moving's name and address, the
"Marine Lumber Inventory" box has Crown's name and address.
[Id., Exhs. D-E.]

7

the record that Precision Moving received any of the materials referred to in the Invoices. [Id.]

Defendant argues that the statements in the Stadtler Declaration, the Tracy Declaration, and the E. McGrath Declaration are disputed by the Fraser Declaration, the Rodrigues Declaration, and the declaration of Earnest Moritomo[6] show that the material facts of this case are in dispute. Defendant argues that all six of Plaintiff's claims are based upon disputed material facts because the parties dispute whether any contract was formed or any meeting of the minds existed.

## III. **Reply**

Plaintiff argues that the transactions at issue in the instant case followed the same pattern as a prior transaction between the parties in 2015, except that Precision Moving paid for those materials. [Reply at 2.] Mr. Tracy states that, in early 2015, he began discussing with Mr. Fraser the possibility of Precision Moving ordering materials from Marine Lumber. They exchanged emails and spoke on the phone. [Statement of Objections in Response to Def.'s CSOF ("Pltf.'s Reply CSOF"), filed 10/17/16 (dkt. no. 31), Reply Decl. of Scott Tracy ("Tracy Reply Decl.") at ¶¶ 3-4, Exhs. K-L.] Around June 2015, Mr. Fraser placed a phone order on behalf of Precision Moving

---

[6] Ernest Moritomo is Precision Moving's general manager. [Def.'s CSOF, Decl. of Ernest Moritomo ("Moritomo Decl.") at ¶ 2.]

8

with Mr. Tracy.  Mr. Tracy arranged for the materials to be

shipped to Crown and for Precision Moving to pick up the

materials from Crown.  [Tracy Reply Decl. at ¶ 5, Exh. M (email

dated 6/25/15 to Lezlie St. Germain of Crown from Tracy – with

copy to Fraser – regarding Fraser picking up materials from

Crown).]  According to Mr. Tracy, Crown is

> a moving company with offices in several states in
> the U.S., including Hawaii.  Marine [Lumber]
> regularly ships containers with inventory to Crown
> in Hawaii, both for Crown's local business
> operations and Crown's customers.  Whenever there
> is an excess of Marine [Lumber] inventory in
> transit or already delivered to Crown, Marine
> [Lumber] typically offers it to other customers.

[Id. at ¶ 5.]  On July 1, 2015, Lisa McGrath sent an invoice

dated June 26, 2015 for the materials to Mr. Fraser via email,

with a copy to Mr. Tracy.[7]  [Def.'s Reply CSOF, Decl. of

Lisa McGrath ("L. McGrath Reply Decl.") at ¶ 3, Exh. N.]  The

upper right corner of the invoice states "Marine Lumber

Inventory" with Crown's name and address.  According to

Lisa McGrath, this notation "means that the container of wooden

crates that Precision purchased from Marine [Lumber] was either

in transit or already delivered to Crown's Mililani warehouse.

Whenever Marine [Lumber] sells goods to customers in this manner,

that same 'Marine Lumber Inventory' notation appears on the

---

[7] Lisa McGrath is an employee of Marine Lumber.  Her job
duties include sending invoices to customers and keeping track of
whether the invoices are paid.  She typically sends the invoices
via email.  [L. McGrath Reply Decl. at ¶ 2.]

invoice." [L. McGrath Reply Decl. at ¶ 3.] Precision Moving paid the June 26, 2015 invoice. [Id. at ¶ 4, Exh. O.]

Mr. Tracy corresponded with Mr. Fraser in January 2016 about Marine Lumber products. [Tracy Reply Decl. at ¶¶ 6-7, Exhs. P-Q.] In a January 19, 2016 email exchange, Mr. Fraser placed an order with Marine Lumber. [Id. at ¶ 8, Exh. S.] The 1/29/16 Invoice was for this order. [Id. at ¶ 8.]

Lisa McGrath sent the Invoices to Mr. Fraser by email. [L. McGrath Reply Decl. at ¶ 5, Exh. T.] Neither Mr. Fraser nor anyone else disputed the amounts stated in the Invoices or indicating that the materials were not delivered. [L. McGrath Reply Decl. at ¶ 5.] Mr. Tracy also states that Mr. Fraser never contacted him to dispute any of the Invoices which Lisa McGrath sent him. [Tracy Reply Decl. at ¶ 8.]

According to Mr. Tracy, after Precision Moving received the first shipment, Mr. Fraser informed him by phone that they were satisfied and that they intended to purchase more materials. Precision Moving placed four more phone orders with Mr. Tracy. Those orders are reflected in the 3/31/16 Invoice, 4/13/16 Invoice, 6/2/16 Invoice, and 6/3/16 Invoice. [Id. at ¶ 9 & n.3.]

As evidence that Marine Lumber delivered the "first shipment" of materials to Precision Moving, Plaintiff submits an email dated February 26, 2016 from Joanne Valoria of Inchcape Shipping Services ("Inchcape") to, *inter alia*, Mr. Tracy and

Mr. Fraser.  The email and its attachment state that the vessel with Marine Lumber's container for Precision Moving had arrived. [Id. at ¶ 10, Exh. U.]  As evidence that Marine Lumber delivered the materials referenced in subsequent invoices, it submits an October 17, 2016 email exchange between Mr. Tracy and Ali Wang of Inchcape "regarding Marine[ Lumber]'s first three shipments to Precision [Moving] in 2016."  [Tracy Reply Decl. at ¶ 11, Exh. V.]  The email includes an excerpt of Inchcape's "gate transaction record" listing Precision Moving for a "Pullout Load" on March 11, 2016 and April 25, 2016, and two on May 31, 2016. [Tracy Reply Decl., Exh. V.]  Mr. Tracy states that he authorized Inchcape to release those containers to Precision Moving.  [Tracy Reply Decl. at ¶ 11.]  Thus, Plaintiff argues that Precision Moving picked up the first three shipments on or about March 11, 2016, April 25, 2016, and May 31, 2016.  [Reply at 3.]

    Plaintiff also submits: 1) an April 5, 2016 email from Mr. Tracy to Mr. Fraser estimating when the second and third shipments that Precision Moving ordered would arrive; [Tracy Reply Decl. at ¶ 12, Exh. W;] 2) a May 19, 2016 email from Mr. Tracy to Margo Santiago, with copy to Mr. Fraser, that included shipping confirmation for the fourth shipment that Precision Moving ordered and arrival information about the third shipment; [Tracy Reply Decl. at ¶ 13, Exh. X;] and 3) a June 3, 2016 email that Mr. Tracy sent to Ms. Santiago and Mr. Fraser

with shipping confirmation for the fifth shipment to Precision Moving [Tracy Reply Decl. at ¶ 14, Exh. Y]. Mr. Tracy states that he sent the May 19, 2016 email to Ms. Santiago after he spoke with her on the phone and Precision Moving ordered the fourth shipment. [Tracy Reply Decl. at ¶ 13.] He sent the June 3, 2016 email after a phone conversation with Mr. Fraser when Precision Moving ordered another container of Marine Lumber's products. Mr. Tracy states that Precision Moving was originally supposed to pick up the container from Crown's warehouse, but it "was instead consigned to Precision [Moving] during transit." [Id. at ¶ 14.]

On June 8, 2016, Ms. Santiago sent an email to Mr. Tracy, with copy to Mr. Fraser regarding "another KD container consigned to Precision." She states that Mr. Fraser may have referred to it as "the Crown container." [Id. at ¶ 15, Exh. Z.] Mr. Tracy responded later that day by forwarding the June 3, 2016 email to her. [Tracy Reply Decl. at ¶ 16, Exh. AA.] Mr. Tracy states that, based on his experience, the shipping company – Matson Navigation Company, Inc. ("Matson") – would not release the container unless the consignee – here Precision Moving – authorized Matson to do so. [Id. at ¶ 16.] He states that he had written and oral communications with Mr. Fraser, Ms. Rodrigues, Mr. Moritomo, and Ms. Santiago, and none of them disputed Precision Moving's receipt of any of the seven

containers that Marine Lumber shipped to Precision Moving in 2016. [Id. at ¶¶ 11, 16.] Moreover, Plaintiff argues that Precision Moving never rejected the materials in the shipments. [Reply at 5.]

Mr. Tracy states that he discussed Precision Moving's unpaid Invoices with Ms. Rodrigues on June 13, 2016, and he sent the 1/29/16 Invoice and the 3/31/16 Invoice to her on that date. [Tracy Reply Decl. at ¶ 17, Exh. BB.] He resent those invoices to her on June 17, 2016 and June 20, 2016. [Tracy Reply Decl. at ¶¶ 18-19, Exh. CC-DD.] On June 20, 2016, Mr. Tracy sent an email to Ms. Rodrigues inquiring about the status of the invoices. She responded later that day, with a copy to Mr. Fraser, Mr. Moritomo, and Rudy Alivado, stating: "I am still working with Bill regarding payment on our account. I deeply apologize for the inconvenience this is causing you, I will get back to you as soon as I get a payment status." [Tracy Reply Decl., Exh. EE.]

On June 21, 2016, Mr. Tracy emailed Mr. Fraser, with copy to Ms. Rodrigues, stating that he needed to get in touch with Mr. Fraser that day regarding the past due Invoices. Mr. Tracy stated that, if he did not get the accounts caught up, the accounting department would take them away from him and they would go into collections. Later that day, Mr. Fraser responded: "I will check on this ASAP." [Id., Exh. FF.]

Mr. Tracy spoke with Mr. Moritomo on the phone on June 26, 2016. Mr. Moritomo apologized for Precision Moving's failure to pay its Invoices, and he stated that Precision Moving was preparing a written response to Marine Lumber's June 22, 2016 demand letter ("Demand Letter"). [Tracy Reply Decl. at ¶ 22.] On or about July 5, 2016, Mr. Stadtler received a letter dated June 27, 2016 from Mr. Moritomo ("6/27/16 Letter"). [Def.'s Reply CSOF, Reply Decl. of Joshua D. Stadtler ("Stadtler Reply Decl.") at ¶ 3, Exh. GG.[8]] The 6/27/16 Letter states, in pertinent part:

> In response to your demand for an immediate payment of $133,870.62 to William Fraser and Michelle Rodrigues, Precision Moving . . . is unable to pay the amount requested.
>
> Our problem is that our office had in error over booked jobs. . . .
>
> The problem is this increase [sic] amount of business had placed a strain on our financial resources. This increased business increased expenses. . . .

[Stadtler Reply Decl., Exh. GG.] Mr. Moritomo asked Mr. Stadtler to "bear with us and [he would] try to get some monies out soon." [Id.] He stressed that filing a lawsuit would mean additional expenses, and he stated that Precision Moving wanted to avoid that. [Id.] Mr. Stadtler states that the 6/27/16 Letter is

---

[8] Mr. Moritomo apparently sent the 6/27/16 Letter to Mr. Stadtler via certified mail, but he also sent it via email on June 29, 2016. [Stadtler Reply Decl., Exh. HH.]

consistent with his conversation with Mr. Fraser on June 29,
2016, and he asserts that the Fraser Declaration's description of
the conversation is not accurate.  [Stadtler Reply Decl. at ¶ 3.]
Mr. Stadtler states that the Moritomo Declaration inaccurately
describes the correspondence between Mr. Stadtler and
Mr. Moritomo.  [<u>Id.</u> at ¶¶ 3, 5.]

Plaintiff argues that, in light of the evidence that it
has presented, this Court should reject Defendant's attempts to
argue that it never received the materials that Precision Moving
ordered and its attempts to deny responsibility for the Invoices.
Plaintiff argues that it is entitled to summary judgment as to
Count I, in the amount of $130,690.00.  Plaintiff also reiterates
that there are no genuine issues of fact as to their action on
account claim, account stated claim, equitable claims, and quasi-
contract claims.  Plaintiff asserts that Defendant's declarations
are clearly false and do not preclude summary judgment.

## IV.  <u>Surreply</u>

The crux of the Surreply is that the evidence before
this Court shows that the material facts of this case are
disputed.  Defendant argues that Plaintiff cannot deprive
Defendant of its opportunity to conduct discovery, including
taking the depositions of the persons who submitted declarations
upon which Plaintiff's Motion relies.

Defendant also submitted additional declarations by Mr. Fraser and Mr. Moritomo. [Surreply, Suppl. Decl. of William A. Fraser ("Fraser Surreply Decl."), Suppl. Decl. of Ernest Moritomo ("Moritomo Surreply Decl.").] Mr. Fraser states that he had one business dealing with Mr. Tracy in 2015, but he was dissatisfied with Precision Moving's products. Mr. Fraser denied: placing any additional orders; picking up any materials from Crown; receiving a email and/or invoice from Lisa McGrath dated June 26, 2015; having an on-going business relationship with Mr. Tracy and/or Marine Lumber; receiving an email on about January 15, 2016 from Mr. Tracy regarding meeting in Hawai`i or transmitting videos and/or photographs; and receiving any emails from Lisa McGrath transmitting invoices. [Fraser Surreply Decl. at ¶¶ 3-6.] He also disputes other portions of the Tracy Reply Declaration and denies that Precision Moving received the seven containers that Marine Lumber allegedly shipped to Precision Moving in 2016. He acknowledges speaking to Mr. Stadtler on or about June 29, 2016, but denies making the statements that Mr. Stadtler attributes to him. [Id. at ¶¶ 7-8.]

Mr. Moritomo acknowledges speaking with Mr. Tracy, but he denies making the statements Mr. Tracy attributes to him. [Moritomo Surreply Decl. at ¶ 4.] He states that he "did not have an opportunity to look into the situation nor speak with Precision Moving & Storage Inc.'s attorney prior to drafting and

16

sending" the 6/27/16 Letter.  [Id. at ¶ 5.]  According to

Mr. Moritomo, when he wrote the 6/27/16 Letter, he "did not know

what debts Mr. Stadtler was referencing" but he wrote the letter

"to avoid an immediate lawsuit."  [Id.]  Further, he asserts that

the 6/27/16 Letter merely promised to look into the account and

asked for Marine Lumber's patience with Precision Moving's

bookkeeping issues.  He states that Precision Moving's

investigation ultimately confirmed that the Precision Moving "had

not ordered, did not want, and did not receive" the materials at

issue in this case.  [Id.]  Defendant urges this Court to either

deny the Motion outright or receive further briefing and conduct

a further hearing after Defendant has had the opportunity to

conduct adequate discovery.

## DISCUSSION

The Court first turns to Count I.  The elements of a

breach of contract claim are "(1) the contract at issue; (2) the

parties to the contract; (3) whether plaintiff performed under

the contract; (4) the particular provision of the contract

allegedly violated by defendants; and (5) when and how defendants

allegedly breached the contract."  Liberty Mut. Ins. Co. v. Sumo-

Nan LLC, Civil No. 14-00520 DKW-KSC, 2015 WL 2449480, at *3 (D.

Hawai`i May 20, 2015).  Establishing the existence of the

contract requires:

> "'an offer and acceptance, consideration, and
> parties who have the capacity and the authority to

17

> agree as they do.'" <u>In re Doe</u>, 90 Hawai`i 200,
> 208, 978 P.2d 166, 174 (1999) (quoting <u>Dowsett v.</u>
> <u>Cashman</u>, 2 Haw. App. 77, 83, 625 P.2d 1064, 1068
> (1981)).  Further, "'[t]here must be mutual assent
> or a meeting of the minds on all essential
> elements or terms in order to form a binding
> contract.'" <u>Carson v. Saito</u>, 53 Haw. 178, 182,
> 489 P.2d 636, 638 (1971) (quoting <u>Honolulu Rapid</u>
> <u>Transit Co. v. Paschoal</u>, 51 Haw. 19, 26-27, 449
> P.2d 123, 127 (1968)).

<u>York v. Jordan</u>, CIVIL NO. 13-00311 DKW-RLP, 2014 WL 12596317, at

*7 (D. Hawai`i Oct. 27, 2014) (alteration in <u>York</u>).

Plaintiff presents an email dated January 19, 2016 from

Scott (scott@marinelumberco.com) to Bill Fraser

(w_fraser@precisionhawaii.com) in which Scott offered several

products at certain prices.  Later that day, William Fraser

(w_fraser@precisionhawaii.com) responded that he "WHAT [sic] TO

ORDER A LOAD OF 134.00 LIFT VAN."  [Tracy Reply Decl., Exh. S.]

On January 29, 2016, Lisa McGrath emailed an invoice with the

same date in the amount of $18,760.00 for the shipment to

w_fraser@precisionhawaii.com, with copy to Scott.  [L. McGrath

Reply Decl., Exh. T at 1-2; Tracy Reply Decl. at ¶ 8 n.2 (stating

that the 1/29/16 invoice was for the order placed on 1/19/16).]

Plaintiff submitted an email dated February 26, 2016 from Joanne

Valoria of Inchcape to w_fraser@precisionhawaii.com and Scott

regarding the first shipment to Precision Moving.  [Tracy Reply

Decl. at ¶ 10, Exh. U.]  Plaintiff also submitted an October 17,

2016 email to Scott from Ali Wang of Inchcape with the gate

transaction record for Marine Lumber's first three shipments to

18

Precision Moving in 2016, including the shipment referenced in Exhibit U. [Id. at ¶ 11, Exh. V.] Mr. Tracy states that he authorized Inchcape to release the containers listed in Exhibit V to Precision Moving. [Id. at ¶ 11.]

According to Mr. Tracy, after Precision Moving received the first shipment, Mr. Fraser orally informed him that Precision Moving was satisfied with the product and intended to purchase more materials. Precision Moving subsequently placed four phone orders with Mr. Tracy,[9] and those orders are reflected in the invoices dated March 31, April 13, June 2, and June 3, 2016. Lisa McGrath emailed those invoices to w_fraser@precisionhawaii.com, with copy to Scott, on April 6, April 13, June 2, and June 14, 2016, respectively. [Id. at ¶ 9 & n.3; L. McGrath Decl., Exh. T.] Exhibit V provides shipment information for the second and third shipments to Precision Moving. Plaintiff provided a May 19, 2016 email from Mr. Tracy to margo@precisionhawaii.com, with copy to "Bill Frasure (w_fraser@precisionhawaii.com)." [Tracy Reply Decl., Exh. X.] The email included "a copy of a 'Booking Confirmation' from Matson for Marine[ Lumber]'s fourth shipment to Precision [Moving] and provided Ms. Santiago and Mr. Fraser with arrival information for Marine[ Lumber]'s third shipment to Precision

_____

[9] According to Mr. Tracy, Ms. Santiago placed Precision Moving's fourth order during a telephone conversation with him. [Tracy Reply Decl. at ¶ 13.]

[Moving]." [Tracy Reply Decl. at ¶ 13 (citations omitted).]
Plaintiff submitted a June 3, 2016 email from Scott to
margo@precisionhawaii.com and "Bill Frasure
(w_fraser@precisionhawaii.com)" with the Booking Confirmation for
the fifth shipment to Precision Moving. [Id. at ¶ 14, Exh. Y.]

       This Court FINDS that Plaintiff has presented
sufficient evidence to establish their prima facie case that it
had five contracts with Precision Moving for the purchase of
materials and that Precision Moving breached the contracts by
failing to pay for the materials.  Because Plaintiff has carried
its initial burden on summary judgment, the burden shifts to
Defendant "to establish, beyond the pleadings, that there is a
genuine issue for trial."  See Miller v. Glenn Miller Prods.,
Inc., 454 F.3d 975, 987 (9th Cir. 2006).

       Defendant has submitted Mr. Fraser's declaration
denying that either he or any of his employees entered into any
oral contracts with Marine Lumber on behalf of Precision Moving.
Moreover, his employees did not have authority to do so.  [Fraser
Decl. at ¶¶ 3-4.]  He also states that Precision Moving "did not
contract for or receive, and has no record of receiving [the]
materials [referred to in the 6/2/16 Invoice and the 6/3/16
Invoice], as well as others that Marine Lumber Company is suing
on."  [Id. at ¶¶ 8-9.]  Mr. Fraser states that he did not respond
to or dispute the emails that Lisa McGrath sent transmitting the

Invoices because he never received those emails. [Fraser Surreply Decl. at ¶ 5.]

However, other evidence from Precision Moving itself calls into question the plausibility of Mr. Fraser's denials. The Stadtler declaration states that he sent Mr. Fraser and Ms. Rodrigues an email on or about June 29, 2016, and he spoke to Mr. Fraser on that date. [Stadtler Decl. at ¶ 7, Exh. H.] It was an email stating that day was the deadline for payment referenced in the Demand Letter. [Stadtler Decl., Exh. H.] The Stadtler Declaration also states that he sent two other emails to Mr. Fraser, but he did not receive any response. [Stadtler Decl. at ¶¶ 7-9, Exhs. I-J.] The emails that Mr. Stadtler states that Mr. Fraser did not respond to asserted that Precision Moving owed a total amount of $135,370.82 and represented that Mr. Fraser agreed to wire-transfer payment for one or more of the outstanding invoices the next day. [Stadtler Decl., Exh. I-J.] Mr. Fraser acknowledges speaking with Mr. Stadtler on that June 29, 2016, but he denies making the statements the Stadtler Declaration attributes to him. Mr. Fraser states that he "informed Mr. Stadtler that Precision had no such contract with Marine Lumber Company, that I could not possibly conceive of how Marine Lumber Company was claiming Precision owed that much money, and that I wanted to speak with an attorney for Precision." [Fraser Decl. at ¶ 9.] Yet, he states that, because

he never acknowledged the debt Marine Lumber alleged Precision Moving owed, he "did not respond to Mr. Stadtler's self-serving emails." [Id. at ¶ 11.]

This Court cannot determine issues of credibility on a motion for summary judgment. See Kauhako v. Hawaii Bd. of Educ., CIVIL NO. 13-00567 DKW-BMK, 2015 WL 5312359, at *7 (D. Hawai`i Sept. 9, 2015) (citing Nelson v. City of Davis, 571 F.3d 924 (9th Cir. 2009) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.")). However, the United States Supreme Court stated: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). This Court questions whether a reasonable jury would believe that the president of a company would ignore emails from the attorney representing another company in which the attorney claimed that the president agreed to make payments upon invoices from the second company when the president denied his company was liable for those invoices.

Further, Mr. Moritomo's response in the 6/27/16 Letter to the Demand Letter stated that "Precision Moving . . . is unable to pay the amount requested" and talks about Precision

Moving's over-booking and the financial strain that the over-booking placed on the company. [Stadler Reply Decl., Exh. GG.] Mr. Moritomo states that because of "Mr. Stadler's threats and demands for an immediate response, [he] did not have an opportunity to look into the situation nor speak with Precision Moving & Storage Inc.'s attorney prior to drafting and sending" the 6/27/16 Letter. [Moritomo Surreply Decl. at ¶ 5.] Even if Mr. Moritomo did not have a chance to speak to Precision Moving's attorney, he does not state that he wrote the 6/27/16 Letter before having a chance to speak to Mr. Fraser. This Court questions whether a reasonable jury would believe that either: 1) Mr. Moritomo – Precision Moving's general manager – wrote the 6/27/16 Letter without speaking to Precision Moving's president and without knowing the president's position on the Demand Letter; or 2) Mr. Moritomo wrote the statements in the 6/27/16 Letter when he knew Mr. Fraser had taken the position that Precision Moving were not liable for the Invoices.

This Court has carefully considered all of the evidence before it and, while it appears that some of Precision Moving's evidence creates genuine issue of material fact, Precision Moving's evidence as whole comes close to being so "blatantly contradicted by the record . . . that no reasonable jury could believe it." See Scott, 550 U.S. at 380. Although it is a close question, this Court FINDS that there are genuine issues of

material fact that preclude the entry of judgment as a matter of law as to Count I.  See Fed. R. Civ. P. 56(a).  This Court therefore DENIES the Motion as to Count I.

Further, this Court FINDS that there are similar issues of material fact as to Counts II, III, IV, V, and VI and DENIES the Motion as to those claims.

### CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for Summary Judgment, filed August 5, 2016, is HEREBY DENIED.  The denial of the Motion is WITHOUT PREJUDICE insofar as Plaintiff may file a new motion seeking summary judgment after the record is more fully developed.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 28, 2017.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**MARINE LUMBER COMPANY VS. PRECISION MOVING & STORAGE INC.; CIVIL 16-00365 LEK-RLP; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**